## MITCHELL & BARBEE *v.* J. R. SHANNON.

**Vendor and Purchaser—Recital of Consideration.**

As between a vendor and his vendee, where the conveyance expresses the consideration, its recital is no evidence in their behalf as against those who were attacking it as fraudulent.

**Assignments for Benefit of Creditors—Burden of Proof.**

If the deed contains recitals and fails to make an exhibit of the whole estate, the burden is on defendant to show the facts.

**Compromise and Settlement—Fraud—Burden of Proof.**

Where the theory of plaintiffs is that the defendant, by false statements, induced them to make a settlement, but that is denied by the reply to the counterclaim, the burden is on plaintiffs to establish the fraud.

**Compromise and Settlement—Binding Effect.**

The compromise of a litigation is binding on the parties, unless it was procured by fraud.

APPEAL FROM LINCOLN CIRCUIT COURT.

October 17, 1873.

OPINION BY JUDGE PRYOR:

There is no doubt, from the testimony presented in the record, but what the embarrassed condition of the appellee was the principal cause inducing the appellants to make a compromise by which the former was released from all liability on the judgment for near $10,000. Shannon had been known for many years by nearly all the parties litigant, and particularly by the attorneys for each party; and the opportunity offered all of them for ascertaining his pecuniary condition was of such a character as to have enabled them to make themselves perfectly familiar with his liabilities. The evidence upon record made by the appellee himself, by the execution of the mortgage to his former wards and the deed of trust to Yantis, gave a vigilant creditor every facility for ascertaining his ability to pay, as well as the verity of the claims he professed to owe. The deed of trust not only gave to the creditors named therein the beneficial proceeds of his estate, but made all of his creditors beneficiaries by its provisions. Appellant's debt was embraced by its terms, and in its execution the appellee must have contemplated the necessity of making through this trustee a *pro rata* distribution of the proceeds of his property between his creditors.

If the purposes of the appellee were fraudulent in its execution, it could not have been well carried out, unless in the presentation of false claims by pretended creditors. This deed, however, is not attacked as fraudulent, nor is it the object of the counterclaim to have it cancelled. If this writing should be assailed as being in fraud of appellant's rights, the parties claiming under it would be required to show that their respective claims were valid. As between a vendor and vendee, where the conveyance expresses the consideration, its recital is no evidence in their behalf against those who are attacking it as fraudulent. The deed, in this case, is introduced or relied on by the appellants as evidence only of fraud on the part of appellee in procuring the compromise, and when produced conduces to show the utmost good faith upon the part of Shannon in securing his creditors by a surrender to them of all his property. If the deed contains recitals that are false, and fails to make an exhibit of appellee's whole estate, the onus rests upon the appellants to show the facts. The theory of appellants is that the appellee, by false statements, verbally and in writing, induced them to make

the settlement. This is denied by the reply to the counterclaim, and upon the issue thus made the burden is on the appellants to show the .fraud. If the judgment or debt claimed by appellants had not been controverted, but recognized by the appellee as a just claim, and its adjustment alleged to have been procured by fraud, the burden would be on the appellant, and the chancellor, with a denial by the appellee and a submission without proof, would, as a matter of course, dismiss the petition.

In this case, however, the appellee, as surety on the note, was resisting any recovery. The case had been twice tried and a motion for a new trial was pending when the compromise was made. The claim was the subject of legal controversy, and what might have been the extent of the appellant's recovery is a matter of conjecture; that the settlement was a compromise of a claim alleged to be just upon the one side and denied on the other is certain; and when these parties were negotiating in reference to it, the chances for and against the recovery were no doubt considered, as well as the insolvent condition of the appellee. The appellee may have succeeded, and if so the result of the compromise would have been a loss to him of twenty-two hundred dollars, and a gain to the appellants of that much; and on the other hand, with success for the appellants, they would have made several thousand dollars. These chances for gain or loss were all ended by a compromise of the litigation, and this compromise is binding unless fraud is shown in procuring it. The proposition to compromise seems not to have been made by the appellee, and was certainly not urged by him. He was resisting the payment of the claim in court and declaring to his friends that he never would pay it. His persistence in refusing to pay and his statements that he never would pay the claim were known to the appellants before the compromise was made. His business transactions were known to his neighbors. His inability to pay his liabilities was conceded. His liabilities mentioned in the deed of trust and mortgage all existed so far as there is any proof in regard to them.

Jones, Given & Company could have shown his liability to them if called on, or could have made statements if the fact existed, showing a deposit of gold with them by the appellee. A liability of four or five thousand dollars is shown to have existed on the part of appellee to one of the firm of Jones, Given

& Company, and a full explanation of all their business transactions could doubtless have been had from any member of the firm. The appellants had undertaken to show that this firm had the gold belonging to the appellee, and was really his debtor instead of his creditor; and failing to do this, the recitals in the deed must be taken as true. About fifteen months elapsed from the execution of this deed of trust to the date of the compromise. The appellants had ample time to have investigated fully with reference to the conduct of the appellee, and having failed to do so, and to establish any fraudulent act by which this compromise was brought about, they are without remedy. The only evidence upon which the existence of fraud may be suspected is in the rapid accumulation of means by the appellee after this compromise was effected. The chancellor's suspicions, however, would not authorize a cancelment of such a settlement, and particularly when no real injury is shown to have resulted to appellants by reason of it. The counsel on both sides of the case regarded it as a compromise of the legal controversy, and not the componding of an acknowledged liability. It is true that the exhibition of the appellee's condition prompted the attorneys for the appellants to advise a settlement; still there is nothing in this case to show that the advice should not have been followed. There is a failure of proof as to the alleged fraud on the part of appellee, and the judgment of the court below is therefore affirmed.

*John S. VanWinkle, for appellants.*

*Hill & Alcorn, for appellee.*